UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

|  |  |  |
|---|---|---|
| WILLIAM R. FREEMAN, | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 1:20-cv-00087-MSM-PAS |
| | ) | |
| J. P. MORGAN BANK & CO., | ) | |
| a/k/a J. P. MORGAN CHASE BANK, N.A. | ) | |
| Defendants. | ) | |

MEMORANDUM AND ORDER

Mary S. McElroy, United States District Judge.

The Mortgage Foreclosure Crisis of 2007-2008[1] left its mark on thousands, no doubt hundreds of thousands, or even millions of homeowners.  Some in its wake were lucky or resourceful or financially stable enough, despite an economic recession, to continue to afford their mortgage payments or to secure loan modifications; either way, they remained in their homes.  Others were not so fortunate.  This Plaintiff is one of the latter.  At one point in time, Mr. Freeman owned two properties, one in Tiverton and one in Little Compton, both in Rhode Island.  They were worth enough

---

[1] *See* "Report to Congress on the Root Causes of the Foreclosure Crisis," by the United States Department of Housing and Urban Development, Office of Policy Development and Research, at vi (January 2010), citing the "extremely high levels of defaults and foreclosures" that were so pervasive as to "draw[] comparisons to the levels of distress experienced in the Great Depression."

to serve as collateral for loans in the aggregate of $804,925 ($595,000 on the property at 39 Side Road, Little Compton, and $209,925 on the property at 135 Randolph Avenue, Tiverton).[2]   Mr. Freeman has been litigating continuously for a decade, repetitively in state courts, in the federal bankruptcy court, and now in this Court in an attempt to hold onto these properties against foreclosure.   He contends, in short,[3] that dozens of people and entities – some named as defendants, some not; some served, some not – were responsible for, in the first instance, fraudulently misleading him to believe that he could afford these mortgages and, at the end, unlawfully declaring him in default and moving to foreclosure.   He names 28 persons and entities[4] in the caption to this lawsuit who, in one way or another in his view, played some role in manipulating him, falsifying documents, cutting corners, misusing the foreclosure process, and otherwise unlawfully seeking to deprive him of his property.[5]

---

[2] The Court takes judicial notice of the Judgment entered in *Freeman v. J. P. Morgan Chase Bank, N.A.,* C.A. NC 2021-0214. declaring J.P.Morgan Chase, N.A. the holder of two promissory notes executed in 2005 in these amounts relative to these two properties.   (ECF No. 54-5.)   In addition, ECF No. 54-3 is a Joint Statement of Undisputed Facts entered in that case, signed by both Mr. Freeman's then-counsel and counsel for J. P. Morgan Chase Bank, N.A., reciting many of the early facts associated with this case.   Those facts appear not to be in dispute here.

[3] There is, actually, nothing "short" about Mr. Freeman's claims.   He filed a 61-page Amended Complaint including 185 numbered paragraphs.   Since that filing, he has sought five restraining orders and filed so many motions that, on August 25, 2021, this Court restrained him from filing any additional paperwork without prior approval.

[4] In addition to 28 named persons and entities, he added: "All Chase alleged attorneys—None have standing, authorizations, POA, or any right to Freeman information."  (ECF No. 6.)

[5] The Court borrows freely from the Fannie Mae Response to the Motion to Dismiss to describe the Complaint:   "Count I appears to be a demand for acceptance of a

With respect to his claims relating to lawful ownership of these properties, the holders of the notes and mortgages relating to them, and the lawfulness of foreclosure on them, he has worn out his welcome in the state court.[6]   In his first Superior Court action,[7] the trial judge refused to permit him to voluntarily withdraw his complaint, mid-trial, without prejudice: in order to preclude him from re-filing and starting over, she offered only a dismissal with prejudice or a continuation of the trial to its conclusion.   Opting for the latter, he lost the case on its merits.   His appeal was dismissed. *Freeman v. J. P. Morgan Chase Bank, N.A.,* No. 17-154A (ECF No. 54-7.) His third Superior Court case[8] was dismissed with a warning against attempting to continue to litigate the same claims.   In bankruptcy court, he filed two adversary proceedings, contesting J. P. Morgan's creditor claim.   The bankruptcy judge entered

---

modification proposal (¶¶ 83-97); Count II pursues a violation of the Sherman Act (¶¶ 98-103); Count III pursues breach of the covenant of good faith and fair dealing in the commencement of foreclosure (¶¶ 104-110); Count IV seeks injunctive relief until mortgage loan documents are produced (¶¶ 111-118); Counts V, VI and VIII pursue claims of fraud and misrepresentation (¶¶ 119-163, 169-170); Count VII seeks declaratory relief (¶¶ 164-168); and Count IX pursues a claim to set aside foreclosures on the Properties (¶¶171-187).  (ECF No. 58, at 3.)

[6] In the Rhode Island Superior Court, Van Couyghen, J., issued an Order on May 25, 18, warning Mr. Freeman that any filings embodying the same challenges as had twice been rejected could result in an Order enjoining him from further filings without court permission and/or sanctions.  (ECF No 65-12, at 12-13.)

[7] *Freeman v. J. P. Morgan Chase Bank, N.A.,* NSC 2012-0214.

[8] *Freeman v. J. P. Morgan Chase Bank, N.A,* NSC 2017-0371 was dismissed on *res judicata* grounds.  In the interim between the first and third Newport Superior Court cases, Mr. Freeman filed *Freeman v. McGreen,* NSC 2017-0253, but according to the state court docket, of which this Court takes judicial notice, little action has occurred since 2018, and the named defendant as well as some others were dismissed.

3

relief from what would otherwise have been an automatic stay (ECF No. 54-19) and permitted the foreclosure to proceed, declaring J. P. Morgan the holder of the notes. Ultimately, the adversary proceedings were dismissed.[9]

Having exhausted his attempts to gain relief in two other courts, Mr. Freeman has turned to this Court.  His claims, however, find no purchase here.  For a variety of reasons discussed below, the Motions to Dismiss filed by Jones Moving and Storage Co., LLC ("Jones") (ECF No. 45), Fidelity National Financial, Inc. ("Fidelity") (ECF No. 48), Harmon Law Offices, P.C. ("Harmon") (ECF No. 50), J. P. Morgan Chase Bank, N.A.("Chase") (ECF No. 54), Wilmington Savings Fund Society, FSB ("Wilmington") jointly with Carrington Mortgage Services, LLC ("Carrington") (ECF No. 55), Federal National Mortgage Assn. ("Fannie Mae") (ECF No. 57), Cliff Ponte ("Ponte") (ECF No. 62) and Morgan Lewis & Bockius, LLP ("Morgan Lewis") (ECF No. 65) are GRANTED.  As discussed in Part II(C)(2), below, the Court *sua sponte* DISMISSES the Complaint against the remaining defendants for want of service.[10]

## I.    JURISDICTION AND STANDARD OF REVIEW

---

[9] *See* docket Bankruptcy BR No. 18-11609, Adversary Proceedings 11-19-AP-01019 and ECF Nos 54-23 and 24, of which the Court takes judicial notice.

[10] These defendants, as they are named in the Caption, are:  FDIC, Keller Williams, Lynn Freeland, Jacquie Algier, Little Compton Police, Little Compton Town Clerk, Safeguard Properties (named twice), Orlans PLC, CMG Financial, Mgt24, Ryan Murphy, REO1, Lender Live, FIRST Data, RI DBR, HAMP Programs (US TREASURY) Rolanda Jones, Mr. Gerald Coyne, State Police, FBI and U.S. Department of Justice.

There is no jurisdictional statement in the plaintiff's Amended Complaint (ECF No. 6.)[11] Cognizant of its obligation to construe *pro se* paperwork liberally, and with appreciation of the difficulty faced by laypersons in navigating the complex network of rules that comprise the Federal Rules of Civil Procedure, the Court has examined the content of the document and discerned that among myriad state and federal laws Mr. Freeman alleges were violated is 15 U.S.C. § 1692 *et seq*, the Fair Debt Collection Practices Act ("FDCPA"). That alone is sufficient to confer federal question jurisdiction pursuant to 28 U.S.C. § 1331.

The standard of review on a Rule 12(b)(6) Motion to Dismiss is familiar: the Court is to take as true all well-pleaded allegations, draw from them all inferences in favor of the plaintiff, and determine whether together they state a plausible claim for relief. *Ashcroft v. Iqbal,* 556 U.S. 662, 680 (2009). *Pro se* plaintiffs are entitled to a liberal reading of their Complaints, but they are not excused from compliance with the demands of Fed. R. Civ. Proc. 8 (requiring "short and plain" statement of the claim), or 9 (heightened standard of pleading requiring recitation of particularized and specific statements of fact to maintain a claim for fraud)[12] or 12(b)(6) (the need to state a plausible claim upon which relief can be granted).

---

[11] Mr. Freeman's original Complaint was on its face an attempt to "reopen" previous bankruptcy proceedings. (ECF No. 1.)

[12] *F.D.I.C. v. Anchor Properties,* 13 F.3d 27, 31 (1st Cir. 1994) (*pro se* pleadings); *Powers v. Boston Cooper Corp.,* 926 F.2d 109, 111 (1st Cir. 1991) (A] 'fraud count [that] is almost wholly conclusory, and ... lacking in specifics.... is too vague to meet the Rule 9(b) benchmark.'") (quoting *Lopez v. Bulova Watch Co.,* 582 F. Supp. 755, 766 (D.R.I. 1984)).

## II.    ANALYSIS

There are multiple reasons why this lawsuit, taken as a whole or in its individual specific causes of action, cannot survive.  Each of the defendants moving to dismiss has identified cogent arguments for dismissal, either for general reasons or based on the specific allegations against them.  Having spent a considerable amount of time parsing all the motions and responses, and considering many of the exhibits, purported and actual,[13] the Court relies on but a few of these arguments.

### A.    Sufficiency of the Complaint

#### (1)  Fed. R. Civ. P. 8 (a):  Short and Plain Statement

It is difficult for a *pro se* plaintiff who feels wronged to the core, particularly by an entire industry, to write a "short and plain" statement of how he has been injured, and by whom.  Nonetheless, the purpose of Rule 8(a) is to allow defendants fair notice of what they are claimed to have done and a reasonably intelligible explanation of why the plaintiff is entitled to a remedy because of it.  Complaints like Mr. Freeman's pose a particular problem for courts because, backed by both sincerity

---

[13] Mr. Freeman has appended a few "exhibits" and the defendants have provided even more.  It would serve no purpose to prolong this litigation by converting the Rule 12 motions to ones under Rule 56, which would require an invitation to the parties to submit anything additional relevant to summary judgment.  *Foley v. Wells Fargo Bank, N.A.,* 772 F.3d 63, 72 (1st Cir. 2014) (when converting a Rule 12 motion into one under Rule 56, court must give all parties a "reasonable opportunity" to present material in support or opposition).  Therefore, the Court, without forging ahead to summary judgment, has considered only those items whose authenticity is not questioned, which were attached to or incorporated into the Complaint, or which are the proper subject of judicial notice.  *Freeman v. Town of Hudson,* 714 F.3d 29, 36 (1st Cir. 2013).

and passion, they often are lengthy rambling documents that recite entire histories of every dealing between the plaintiff and the putative wrongdoers.  One might think that an overflowing fount of information would contain sufficient facts to overcome the gateway of Rule 12(b)(6), but often the result instead is that it is nearly impossible to glean from the flood a colorable legal claim.  The instant Complaint is one such. The defendants are lumped together with little regard for individual actions[14] and most of the allegations are devoid of specific facts committed by specifically identified defendants.  While a court may "intuit" causes of action if sufficient facts are pled, even liberal interpretation of a *pro se* complaint does not excuse the necessity to plead those facts. *Ahmed v. Rosenblatt,* 118 F.3d 886, 890 (1st Cir. 1997).

### (2) Fed. R. Civ. P. 9(b):  Specificity

Counts V, VI and VIII claim conduct and misrepresentations amounting to fraud.  They claim to apply to "all defendants."  (ECF No. 6).  Fed. R. Civ. P. 9(b) imposes a special pleading requirement that a party "state with particularity the circumstances constituting fraud or mistake."  The circumstances of the fraudulent conduct, specifically time and place, as well as the content of any false or fraudulent representations, must be pled. *Powers v. Boston Cooper Corp.,* 926 F.2d 109, 111 (1st Cir. 1991).  Put another way, the Complaint must identify actual misrepresentations of fact, identify who issued them, when and to whom they were said, and plead

---

[14] For example, after citing extensively to Rhode Island's statutory rules regarding foreclosures, ¶ 20 of the Amended Complaint simply asserts "Defendants did not fully comply with this code therefore the title is not duly perfected."  (ECF No. 6, at 19.)

reliance upon them.  *Nash v. GMAC Mortgage, LLC,* C.A. No. 10-cv-00493 A, 2011 WL 2470645, at *10.  This Complaint is specific only as to Chase because Mr. Freeman alleges particular fraudulent statements regarding the true cost of the loan, and fraudulent statements on the part of the originator that he relied upon in agreeing to the mortgages.   As to all other defendants, Counts V, VI and VIII are DISMISSED for failure to conform to Rule 9(b).

(3) <u>Fed. R. Civ. P. 12(b)(6):  Failure to State a Claim</u>

In one respect, Mr. Freeman's complaints survive Rule 12(b)(6)'s need to state a plausible claim:  his accusations about Chase are clear.  They fail for reasons explained below, but not for noncompliance with Rule 12(b)(6).  While not "short," the Complaint states specific facts in support of its claim that Chase, and its predecessor in interest Washington Mutual ("WaMu")[15] who originated the mortgage, manipulated and lied to him to convince him that he could afford the mortgage when, he claims, his income was demonstrably too little to do so.  He lays the blame for his ultimate default squarely at Chase's feet.  In addition, he has specified alleged defects in the Notice of Default that would satisfy Rule 12(b)(6)'s demands.

With respect to all other defendants on all counts, and to Chase on Count II, the Complaint fails to pass muster under Rule 12(B)(6).  The label of Count II invokes the Sherman Anti-Trust Act but includes no specific allegations of conduct against

---

[15] On or about September 25, 2008, J. P. Morgan Chase Bank, N.A. purchased the loan assets of the failed Washington Mutual Bank, F.A.  *JPMorgan Chase Bank, N.A. v. Healey,* No. 1:112-cv-11922, 2014 WL 1348033, at *1 (D. Mass. Apr. 2, 2014).

particular defendants and appears to rely primarily on a section of California Code inapplicable to these defendants or their conduct.   Thus, all defendants are entitled to DISMISSAL of Count II.

Count III appears to be directed to Orlans PC and Harmon.  Both, as well as Morgan Lewis & Bockius, were involved with Mr. Freeman's properties only as counsel for other defendants.[16]  Mr. Freeman was not a client of any of the three and entered into neither a contractual agreement nor an attorney-client relationship with any of them.   Generally, a law firm is immune from liability for actions taken on behalf of a client with the consent of that client. *Nash,* 2011 WL 2470645, at *13-14. There is no duty owed to an adverse party. *Id.* at *14.  That is true as well of whatever state law claims against these three law firms and their attorneys are contained in the Amended Complaint. *Credit Union Central Falls v. Groff,* 966 A.2d 1262, 1270 (R.I. 2009).  Those three defendants are therefore entitled to DISMISSAL of all counts against them.

Regarding the non-Chase defendants and Counts I and IX, there are simply insufficient factual allegations for them to be able to figure out what Mr. Freeman alleges they did that give rise to those claims.  Even as to the few defendants who are identified by name with reference to specific acts, the brief mentions do not sufficiently describe a plausible claim for relief (*e.g.,* Carrington is alleged to not be

---

[16] The brief mention of Harmon outside the caption makes clear that its role was as an attorney:  Mr. Freeman complains it operated as a "foreclosure mill."  (ECF No. 6, at ¶ 193.)  Morgan Lewis was Chase's counsel in the 2012 case that went to trial.

listed on the note, ECF No. 6, at ¶ 61).  Therefore, Counts I and IX are DISMISSED as to each non-Chase defendant.

Counts IV (injunctive relief) and VII (declaratory relief) speak to remedies only and are not independent causes of action.  As this Memorandum & Order dismisses all substantive counts, Count IV and VII cannot stand and are DISMISSED against all defendants.

Certain putative defendants are not named in the Complaint except in the caption.  Jones, for example, is one of those.   Presumably, as can be inferred from its name, it might have been involved in the foreclosure as a moving company hired to move property pursuant to the Writ of Execution issued by the Second Division District Court in *JP Chase Bank, N.A.,* No. 2CA 2019-00477 (July 23, 2019), of which the Court takes judicial notice.  Fannie Mae is mentioned only in the case caption where it is characterized as "unknown creditor to Lippert's and Freeman alleged mortgages."  There is no indication that there ever was a contract of any sort with Fannie Mae, that Fannie Mae was a creditor or tried to collect a debt, or that Fannie Mae had any role in attempted or consummated foreclosures.  Defendant Ponte is in the same position, having been mentioned only in the case caption.  There are no

specific allegations of conduct by Ponte.[17]   Fidelity[18] is mentioned only twice outside the caption, but there is no allegation that Fidelity played any role in the origination of the note or mortgage, as a lender or assignee, a note holder, a servicer or a mortgagee.[19]   There is no allegation that Fidelity played any role in foreclosure attempts or in attempts to collect on the note.   Thus, even setting aside whether the Complaint alleges facts against other defendants sufficient to state a claim, it categorically does not with respect to Jones, Fannie Mae, Ponte and Fidelity, and they are entitled to DISMISSAL on all Counts.

At this point, Rules 8, 9(b) and 12(b)(6) leave standing only those three Counts (V, VI and VIII) claiming fraudulent behavior on the part of Chase.   As discussed below, however, those claims fall to three doctrines that preclude Mr. Freeman from further litigation of those claims against Chase (and others).

---

[17] Mr. Ponte filed an Affidavit, attesting to the fact that his only involvement in this affair was having been retained by the post-foreclosure owner to sell the Little Compton Property.  The Court does not consider this Affidavit on a Motion to Dismiss, but the failure of any affirmative allegations of wrongful conduct by Ponte is sufficient for dismissal without further explanation of his connection to Mr. Freeman or the properties.  (ECF No. 62, at 3-4.)

[18] Fidelity also maintains that Mr. Freeman sued the wrong party and might have intended to sue Fidelity National Title Insurance Co. which, it says, appears to have issued title insurance policies to a lender that held the mortgages.  As a parent company, it argues, Fidelity National Financial, Inc. is not, simply by virtue of its association, liable for actions of its subsidiaries.  *Doe v. Gelineau,* 732 A.2d 43, 44-45 (R.I. 1999).

[19] It is mentioned once, for example, simply as an entity Mr. Freeman has "worked with" (ECF No. 6, at 5.)

(3) <u>Bars to the Exercise of Jurisdiction</u>

Even if procedural rules 8(a), 9(b) and 12(b)(6) did not require dismissal of all of Mr. Freeman's claims against all defendants other than Chase, three rules that speak specifically to serial litigation bar Mr. Freeman from pursuing in this Court all claims against all parties.

(1) *Rooker-Feldman* Doctrine

The *Rooker-Feldman*[20] doctrine applies to the entire Complaint as a vehicle to redress Mr. Freeman's claimed injuries. *Rooker-Feldman* "prevents the lower federal courts from exercising jurisdiction over cases brought by 'state-court losers' challenging 'state-court judgments rendered before the district court proceedings commenced.'" *Landace v. Dennis,* 546 U.S. 459, 460 (2006) (partially quoting *Exxon Mobil Corp. v. Saudi Basic Industries Corp.,* 544 U.S. 280, 284 (2005)). The doctrine forbids a federal court from entertaining claims after state court litigation if the federal claims are "inextricably intertwined" with the merits of the judgment in state court. *SouthCoast Fair Housing v. Sanders,* No. 1:18-536-JJM-LDA, 2019 WL 1382281, at *1 (D.R.I. Mar. 27, 2019). "Inextricably intertwined" means "that [the] federal claim succeeds only if the state court wrongly decided the issue before it." *Id.* If the federal claims are "inextricably intertwined" with the merits of the judgment in state court, then the federal court is "in essence being called upon to review the state-court decision," and that is forbidden. *Id.* A practical test for determining

---

[20] The doctrine takes its name from *Rooker v. Fidelity Trust Co.,* 263 U.S. 413 (1923) and *District of Columbia Court of Appeals v. Feldman,* 460 U.S. 462 (1983).

whether *Rooker-Feldman* precludes a federal action is to look at whether the requested relief in federal court "would void the state court's action or would require [a determination] that the decision was wrong." *Id.* (quoting *Hill v. Town of Conway,* 193 F.3d 33, 39 (1st Cir. 1999)).  Put another way, the question is whether the federal claim can succeed only to the extent the state court was wrong.  *Hill,* 193 F.3d at 39.

The *Rooker-Feldman* doctrine deprives a federal court of subject-matter jurisdiction.  *Mills v. Harmon Law Offices, PC,* 344 F.3d 42, 45 (1st Cir. 2003).  Once a district court has accepted the doctrine's applicability, there is nothing left but to dismiss the action with prejudice.  *Id.* at 46, n. 3.

In 2012, Mr. Freeman filed an action in the Superior Court of Rhode Island challenging Chase's right to foreclose on the properties at issue in this case:  39 Side Road, Little Compton, and 135 Randolph Avenue, Tiverton.  C.A. No. NC-2012-0214.  The Court takes judicial notice of that action, the Complaint that was filed, and the Judgment entered.  *See* ECF Nos. 54-5, 50-1 at 17-57.  His nine claims embraced similar contentions and legal theories as are brought here.  While the trial judge held certain claims waived or abandoned, she found for Chase on the merits as to any misrepresentations and debt collection practices.  (ECF No. 54-5, ¶ 4.)  She declared Chase the holder of the promissory notes and mortgages on the Little Compton property and the Tiverton property, *Id.* at ¶ 3, and she declared the foreclosure activity lawful.

In this Court, Mr. Freeman seeks relief from foreclosure of the properties and a declaration that Chase is not the holder of the notes, that the foreclosure activity

was and is unlawful, that the Notice of Default was defective, and that misrepresentations were made that induced him to enter into the mortgages. This Court cannot grant relief without finding, explicitly or implicitly, that the state court was incorrect in its disposition of CA No. NSC-2012-0214. It is just that sort of exercise of subject-matter jurisdiction that *Rooker-Feldman* forbids. For that reason, this entire case must be dismissed.

(2) Collateral Estoppel and *Res Judicata*

Collateral estoppel and *res judicata* are related doctrines. *Res judicata,* known as "claim preclusion," bars litigation, in any forum, of claims that were raised or could have been raised in previous litigation. Collateral estoppel, known as "issue preclusion," bars the re-litigation of issues previously determined. *Lincoln-Dodge, Inc. v. Sullivan,* 588 F. Supp. 2d 224, 229 (D.R.I. 2008).

A federal court looks to state law to determine whether claims newly raised are barred by *res judicata. Kremer v. Chemical Const. Corp.,* 456 U.S. 461, 466 (1982) (federal courts must "give the same preclusive effect to state court judgments that those judgments would be given in the courts of the State from which the judgments emerged"); *Martins v. Boston Public Health Comm'n,* 77 F. App'x 4, 5 (1st Cir. 2003) (*res judicata* effect of a state court judgment in federal court determined by state law). In Rhode Island, there are three elements that must be met: (a) identity of parties, identity of issues, and a final judgment in the earlier action. *Reynolds v. First NLC Financial Serv., LLC,* 81 A.3d 111, 1115-16 (R.I. 2014). The Newport Superior Court action against Chase meets all three criteria. The parties, Mr. Freeman and Chase,

14

are identical,[21] the issues grew out of the same "transaction, or series of connected transactions" and final judgment entered.[22]   *Bossian v. Anderson,* 991 A.2d 1025, 1027 (R.I. 2010) (issues "arising from the same transaction or series of transactions which could have properly been raised in a previous litigation are barred from a later action."). Every claim against Chase that is made here was raised, or could have been raised, in the state court lawsuit.[23]  Therefore, *res judicata* bars litigation of all claims in this Complaint that are lodged against Chase.

Collateral estoppel, because it precludes only issues and not entire claims, has both more rigid and less rigid requirements.  The identity of issues need not be absolute; rather, "it is enough that the issues are in substance identical." *Manganella v. Evanston Ins. Co.,* 700 F.3d 585, 591 (1st Cir. 2012).  On the other hand, the issue

---

[21] In Mr. Freeman's 2017 state court litigation, the trial justice found that Morgan Lewis, as counsel in the 2012 action, was in privity with Chase and that all the elements therefore of *res judicata* applied, precluding Mr. Freeman from litigating further against Morgan Freeman as well as Chase.  (ECF No. 65-12, at 8.)  Harmon also claims privity with Chase as its foreclosure counsel. *See, Reynolds v. First NLC Financial Services, LLC,* 81 A.3d 1111, 1116 (R.I. 2014) (parties are in privity when "'there is a commonality of interest between the two entities' and when they 'sufficiently represent' each other's interests." (quoting *Lennon v. Dacomed Corp.,* 901 A.2d 582, 591 (R.I. 2006).  The privity that is important to collateral estoppel, though, is that between the party who actually litigated an issue and a non-party entity in a subsequent proceeding who is alleged to be barred from re-litigating that issue. *Bluff Head Corp. v. Zoning Bd. Of Review of Town of Little Compton*, No. CIV.A. NC 01-103, 2001 WL 1558776, at *6 (R.I. Super. Nov. 15, 2001) (zoning Board's previous decision to permit nonconforming structure collaterally estopped abutting landowner, who was not a party before the zoning board but was in privity with the party, from relitigating that issue).

[22] Mr. Freeman appealed from the judgment and the appeal was dismissed, thus rendering final the Superior Court action.  (ECF No. 54-7.)

must have been actually litigated, it must have been determined by a valid and binding final judgment, and the determination must have been essential to the judgment. *Id. Accord, E. W. Audet & Sons, Inc. v. Fireman's Fund Ins. Co. of Newark, N.J.,* 635 A.2d 1181, 1186 (R.I. 1991). It may only apply against a party who had a "full and fair opportunity to litigate [the] issue in the earlier case." *Casco Indemnity Co. v. O'Connor,* 755 A.2d 779, 782-83 (R.I. 2000).

In this case, defensive collateral estoppel bars Mr. Freeman from re-litigating any of the issues actually litigated in Newport Superior Court. It requires only that the party *against whom* collateral estoppel is interposed be the same as or in privity with the party in the earlier proceeding. *Lee v. Rhode Island Council 94,* 796 A.2d 1080, 1084 (R.I. 2002).[24] Mr. Freeman had a fair opportunity to litigate these issues and, indeed, had a trial on the merits of his claims. The issues surrounding the lawful origination of the notes and mortgages, the attempts to collect on them, the defaults on both, and the identity of the holder of the documents were all actually litigated in Newport. Mr. Freeman lost. He is not allowed another opportunity in this Court to re-litigate either the same issues or the same claims. There are no issues in this Complaint that seem not to have been litigated in Newport and that Court's final judgment bars this litigation. For those reasons, all defendants against whom claims

---

[24] In *Lee*, the Department of Employment and Training had found that the plaintiff was terminated for misconduct and therefore was not eligible to collect unemployment. The Supreme Court later found, after the plaintiff had sued her union for a breach of the duty of fair representation, that she was collaterally estopped from re-litigating whether she had been fired for misconduct, although she could continue to litigate the penalty. *Id.* at 1084. The previous finding of proven misconduct was held conclusive. *Id.*

are made regarding the notes, the mortgages, the defaults and the foreclosures, are entitled to DISMISSAL.

(B)   FAILURES OF SERVICE

The above disposes on substantive grounds of the claims against the eight (8) defendants who Moved to Dismiss.  There is a procedural reason why they are entitled to dismissal as well.  And, to the extent that there is any doubt about whether the lawsuit can be maintained against those parties who have *not* moved to dismiss, the Court in the section below explains why defects in service require the dismissal of the Complaint against every putative and actual defendant.

(1) Want of Service

There are 21 persons or entities named as defendants in the caption to Mr. Freeman's Amended Complaint who have never been served.  *See supra* at n. 10.  Fed. R. Civ. P. 4(m) allows the Court to *sua sponte* dismiss against those defendants who have not been served within 90 days of the filing of the complaint.  Dismissal is contingent upon the Court's having given the plaintiff notice of its intended action and allowing the plaintiff to demonstrate good cause for the failure.

This Court has bent over backwards to assist Mr. Freeman in accomplishing service on those he contended were at fault in what happened to him and his properties.  The Complaint was first filed on February 19, 2020.  Mr. Freeman was advised by letter of April 7, 2020, that he must complete the forms to request service which were supplied with the letter, using complete street addresses and not post-office boxes.  (ECF No. 7.)  Two months later, having received no requests for

17

summonses, the Court noted that Mr. Freeman – who had already filed a typewritten 61-page Amended Complaint -- had professed inability to complete the forms. *See Text Order* of June 4, 2020. The Court advised Mr. Freeman that if he supplied the Clerk with a legible list of the names and addresses of persons upon whom he desired service, the Clerk would "assist the plaintiff with the completion of the forms." Eight months passed without the plaintiff providing anything to accomplish service. On February 12, 2021, the Court gave Mr. Freeman twenty (20) days to show cause why he had not complied with the June 4th Order. (ECF No. 25.)

On February 16, 2021, Mr. Freeman provided a list of those he desired to have served. (ECF No. 26.) That list included the names of approximately forty-seven (47) persons and entities. Many of the names did not appear in the Amended Complaint, either in the caption of defendants or the recitation of events. Many of the names lacked street addresses.[25] As a result of what he provided, service could be and was accomplished for eight (8) defendants only.

This matter has been pending for more than two years. Because of Mr. Freeman's failure to comply with the procedural requirements to effectuate service, and in spite of the Court's efforts to assist him, the majority of those he named as defendants in his Amended Complaint have likely had no idea, he was trying to sue

---

[25] Among the declarations that were the least informative in terms of actually resulting in service, for example, were these: "Jeffrey Craig RI license 5574 -illegal auctioneer Jeffrey Craig , Harmon Law Scott Raynes, Police, Little Compton, RI, 02837 Lori Tellier, RI State Police, white collar crime investigative Forensics , CPA, testified in Studio 38 Trial, William Ferland, Department of Justice, Providence, RI." (ECF No. 26, p. 5.)

them.  As the First Circuit has said many times, *pro se* status does not excuse non-compliance with procedural rules.  *F.D.I.C. v. Anchor Properties,* 13 F.3d 27, 31 (1st Cir. 1994.  Pursuant to its authority under Rule 4(m), the Court DISMISSES this case as against those persons listed *supra* at n. 10.

 (2) <u>Untimely Service</u>

 Pursuant to Fed. R. Civ. P. 4(m), service is to be made within ninety (90) days of the filing of a Complaint, unless extended for good cause by the Court.  As recounted above, despite the Court's efforts to assist Mr. Freeman, he failed to comply with the Order of June 4th, 2020, to provide a legible list of names of addresses of defendants he sought to serve no later than June 30, 2020.  On February 12, 2021, Mr. Freeman was given twenty (20) days to show cause why he had failed to comply.  He did not do so.  Instead, on February 26, 2021, he simply filed his list of approximately 47 people and entities, many of whom seem to have no connection to his claims.  He filed more than 100 pages of sundry "exhibits" to that list. But in all that paper there was no explanation for his late compliance with the June 4th Order, much less a showing of "cause."  While the Court forwarded nine (9)[26] of the names to the U.S. Marshalls to accomplish service, it did not rule on whether Mr. Freeman had shown cause for his untimely response.

---

[26] One was "Orlans PC," whose summons was returned unexecuted because only a post office box number was provided by Mr. Freeman in spite of the specific directive to provide street addresses.  (ECF No. 42.)  Mr. Freeman never took any steps to remedy this problem.

Now, the eight (8) entities and persons successfully served have moved to dismiss, contending, *inter alia*, that service was untimely.  That contention has merit and with respect to that argument, the Motions to Dismiss are GRANTED.  (ECF Nos. 45, 48, 50, 54, 55, 57, 62 and 65.)

## III.   CONCLUSION

Mr. Freeman has had many bites at the same apple.  He will no doubt not be satisfied with the resolution of this one.  There is nothing that this Court might say that is likely to convince him that he has not been wronged by the machinery of the network of banks, lenders, servicers, and others that line the road from mortgage to eviction after foreclosure.  But he has taken advantage, and more, of every forum the law makes available to him, and in each such forum his claims have been found wanting.  There are no more Complaints that can be lodged, no more Motions to be filed, and no more trials to be had.

This Complaint, for all the reasons explained above, and more that have been raised by the defendants who filed Motions to Dismiss, is DISMISSED with prejudice.[27]

## IV.   ADDENDUM

On March 25, 2022, Mr. Freeman proffered for filing another Motion to Amend in which he proposed to add new defendants and new claims arising from an eviction

---

[27] The Court has the authority to dismiss with leave to amend.  But that would be futile.  *Rooker-Feldman*, *res judicata* and collateral estoppel would continue to apply no matter how skillfully a new Complaint were drafted.

at the Tiverton address on September 16, 2021.  He did not comply with this Court's
August 25, 2021, order to seek approval before filing any new documents.  In any
event, considering the dismissal of the instant action, permission to file is denied, and
the Motion to Amend, were it accepted for filing, which it is not, would be denied as
moot.

IT IS SO ORDERED:

_____
Mary S. McElroy,
United States District Judge

March 30, 2022